United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHERI MCGINNIS-AQUILINA,
Plaintiff,

v.

RIGHT AT SCHOOL, LLC,
Defendant.

Case No. 3:26-cv-07939-JSC

**ORDER RE: MOTION TO REMAND CASE TO STATE COURT**

Re: Dkt. No. 11

Plaintiff, on behalf of a putative class action, sues Right at School, LLC ("Defendant") for various violations of California state labor law. (Dkt. No. 1-1).[1] Plaintiff filed its case in Santa Clara County Superior Court, (*id.*), and Defendant then removed the case to this Court under the Class Action Fairness Act ("CAFA"). (Dkt. No. 1.) Pending before the Court is Plaintiff's motion to remand because of an insufficient amount in controversy. (Dkt. No. 11.) Having carefully considered the parties' submissions, and with the benefit of oral argument on November 19, 2026, the Court DENIES the motion. In response to Plaintiff's factual attack on the amount in controversy, Defendant has placed at least $17,403,000 in controversy by a preponderance of the evidence and thereby satisfied the requirements of removal under CAFA.

**BACKGROUND**

Defendant is a corporate resident of Delaware and Illinois. (Dkt. No. 1 ¶ 22.) Plaintiff and putative class members are California residents who worked for Defendant for the four years preceding the filing of the Complaint. (Dkt. No. 1-1 ¶¶ 11, 57.)

On June 12, 2026, Plaintiff filed the instant lawsuit in state court, alleging causes of action under California's wage and hour laws for (1) failure to pay wages and overtime under Labor

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generate page numbers at the top of the documents.

Code §§ 510 and 1198; (2) failure to provide meal periods under Labor Code §§ 226.7 and 512(a); (3) failure to provide rest periods under Labor Code § 226.7; (4) failure to pay minimum wages; (5) failure to pay timely wages; (6) failure to keep required payroll records under Labor Code §§ 226 and 1174; (7) failure to reimburse necessary business expenditures under Labor Code §§ 2800 and 2802; (8) failure to provide sick pay under Labor Code § 246; and (9) unfair competition under Business and Professions Code § 17200 et seq. (Dkt. No. 1-1.)

Defendant filed the Notice of Removal on July 30, 2026. (Dkt. No. 1.) In the Notice, Defendant contends removal is proper under CAFA, 28 U.S.C. § 1332(d)(2), because the case has more than 100 putative class members, the amount in controversy exceeds $5,000,000, and Plaintiff is a citizen of California whereas Defendant is a citizen of Delaware and Illinois. (Dkt. No. 1 ¶¶ 7, 14.) Defendant estimates the amount in controversy is at least $49 million. (*Id.* ¶¶ 37, 84.)[2] Plaintiff's motion for remand contends removal is improper because the amount in controversy is less than $5,000,000. (*See* Dkt. No. 11 at 9.)

**DISCUSSION**

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (citing 28 U.S.C. § 1332(d)). A defendant seeking removal "bears the burden of establishing that removal is proper" and the "removal statute is strictly construed against removal jurisdiction." *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009). Further, when a case is removed to federal court, the court has an independent obligation to satisfy itself that it has federal subject matter jurisdiction. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004). A case must be remanded to state court "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

Here, there is no dispute the class size is at least 100 members and the minimal diversity

[2] In its opposition to remand, Defendant revised its estimate to $34 million. (Dkt. No. 12 at 23.)

requirement is met. The parties dispute whether the amount in controversy exceeds $5 million. "The amount in controversy is the amount at stake in the underlying litigation." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (cleaned up). "The amount in controversy is not a prospective assessment of a defendant's liability," *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018), nor does the amount in controversy refer to "likely or probable liability; rather, it refers to possible liability." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020). "Among other items, the amount in controversy includes damages (compensatory, punitive, or otherwise) . . . and attorneys' fees awarded under fee-shifting statutes or contract." *Fritsch*, 899 F.3d at 793. "Where, as here, it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1121–22 (9th Cir. 2013) (cleaned up). And, to the extent a plaintiff contests a defendant's allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied[.]" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014).

A defendant's "mere speculation and conjecture, with unreasonable assumptions" cannot establish removal jurisdiction and meet the evidentiary standard. *Ibarra*, 775 F.3d at 1197. An unreasonable assumption is one that is not "grounded in real evidence." *Id.* at 1199. On the other hand, an assumption may be reasonable "if it is founded on the allegations of the complaint." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019); *see also Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025) ("[T]hose assumptions . . . can be founded on the allegations of the complaint and do not necessarily need to be supported by evidence."). The district court's task is simply to determine if the defendant's "reasoning and underlying assumptions are reasonable." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022).

## I. EVIDENTIARY OBJECTIONS

As an initial matter, Plaintiff argues two of Defendant's declarations attached to its notice

of removal are inadmissible hearsay and lack foundation such that they cannot be considered in assessing the amount in controversy. (Dkt. No. 11 at 11-12.)

Plaintiff's argument is unpersuasive. Courts "consider . . . summary-judgment-type evidence relevant to the amount in controversy at the time of removal," *Fritsch*, 899 F.3d at 793, and, "[w]hen evidence is not presented in an admissible form in the context of a motion for summary judgment, but it may be presented in an admissible form at trial, a court may still consider that evidence." *Alvarado v. Charter Commc'ns., LLC*, No. 2:26-cv-01813-AH, 2026 WL 1121926, at *3 (C.D. Cal. Apr. 23, 2026) (cleaned up). Thus, so long as the declarations could be admissible at trial if presented in the correct form, the Court can "consider that evidence." *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003).

Accordingly, Ninth Circuit precedent consistently allows defendants to use similar payroll affidavits and declarations to establish the amount in controversy for CAFA removal cases. *See, e.g.*, *Perez*, 131 F.4th at 809 (relying on declaration from a company representative showing the number of nonexempt employees it employed during the class period); *Arias*, 936 F.3d at 923 (relying on declaration from human resources officer including data on the number of nonexempt employees, hourly rate of pay, and number of workweeks worked by putative class members); *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010) (relying on declaration from company representative providing summary of billings amounts to customers). And, revealingly, Plaintiff cites no cases in its argument for exclusion, let alone cases involving similar circumstances. (*See* Dkt. No. 11 at 11-12.)

Here, Suzanne Housty states she is Vice President for Human Resources for Defendant and "routinely access[es] and rel[ies] upon HR systems, databases, and other internal platforms that store personnel and compensation data, which are created and maintained in the ordinary course of business." (Dkt. No. 1-3 ¶¶ 1-2.) "That is sufficient to establish foundation." *Peters v. TA Operating LLC*, No. EDCV 22-1831 JGB (SHKx), 2023 WL 1090350, at *7 (C.D. Cal. Jan. 26, 2023); *Cortez v. United Nat. Foods, Inc.*, No. 18-cv-04603-BLF, 2019 WL 955001 (N.D. Cal. Feb. 27, 2019) ("[Employee's] description of the information presents a proper foundation for the evidence and is not merely speculative."). As to hearsay, Ms. Housty only "relies on [her]

United States District Court
Northern District of California

personal knowledge learned from her position and her review of payroll records. To the extent that those payroll records [may themselves] contain hearsay statements, Defendant has established that the business records of regularly conducted activity, which are not excluded by the hearsay rule." *Arnett v. Traditions Health LLC*, No. EDCV 23-2324 JGB (SHKx), 2024 WL 289916, at * 4 (C.D. Cal. Jan. 24, 2024) (cleaned up). And, to the extent Ms. Housty's declaration does not directly set on the elements of a business records exception, as demanded by Plaintiff, she adds such elements in her supplemental declaration. (*See* Dkt. 12-1 ¶ 4); *see also Mosqueda v. UniFirst Corp.*, No.: CV 14-05324-AB (VBKx), 2014 WL 12966415, at *5 (C.D. Cal. Sept. 25, 2014) ("While [declarant's] declaration could have been tailored to more clearly present the foundational elements of Rule 803(6) on their face, a common sense reading of the declaration makes clear that the data relied upon by [declarant] would be admissible." (cleaned up)).

Mr. Clark "validat[ed] and process[ed] the datasets" before using "summaries" to "support [his] jurisdictional estimates." (Dkt. No. 1-4 ¶ 4.) Mr. Clark's declaration "demonstrate[s] his personal knowledge and set out facts that would be admissible in evidence based on his review of Defendant['s] business records." *Alvarado*, 2026 WL 1121926, at *3. At this stage, that is enough for the Court to consider his evidence.

So, the Court will consider the declarations when weighing whether Defendant met its burden of establishing the amount in controversy requirement.

## II. WHETHER PLAINTIFF RAISES A FACIAL OR FACTUAL CHALLENGE

When a plaintiff "does not enumerate the putative class's claimed damages" in her state court complaint, a defendant can remove the case to federal court by "alleg[ing] in its notice of removal that the amount in controversy is met." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). At that point:

> [A] plaintiff can contest the amount in controversy by making either a 'facial' or 'factual' attack on the defendant's jurisdictional allegations. A 'facial' attack accepts the truth of the defendant's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction. A factual attack contests the truth of the allegations themselves.

*Id.* Defendant argues Plaintiff's motion "presents a facial, and not a factual challenge" because

Plaintiff has not offered any type of evidence to challenge Defendant's evidence, focuses her challenge on "Defendant's use of violation rates," and accepts the truth of "the number of workweeks, the number of employees, [and] the average hourly rate." (Dkt. No. 12 at 9.) Defendant's position is foreclosed by the Ninth Circuit's reasoning in *Harris*. There, the plaintiff "did not introduce evidence outside the pleadings" but instead "disputed the factual basis of [defendant's] assumption" that all class members had suffered a given meal and rest break violation rate because Defendant had failed "to demonstrate that all members of the Hourly Employee Class worked shifts long enough to qualify for meal and rest periods." *Id.* at 700. The Ninth Circuit characterized this showing as "a factual challenge to [defendant's] assumptions." *Id.* at 701. So too here. To take one example of several, Plaintiff's motion challenges Defendant's assumed violation rates for meal and rest breaks as failing to account for "shift lengths" and "number of part-time employees," among other factors. (Dkt. No. 11 at 20.) Under *Harris*, this constitutes a factual attack. *See Harris*, 980 F.3d at 700-01 ("Because [plaintiff] contested the truth of the defendant's factual allegations, we conclude that [plaintiff's] motion to remand raised a factual challenge to [defendant's] assumptions [about the size of the claim]." (cleaned up)); *see also Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) (characterizing a "challenge [to] the rationality of [a defendant's] assertions" as a factual attack). And, going beyond the plaintiff in *Harris*, Plaintiff does introduce at least some evidence to challenge the truth of Defendant's minimum wage calculations. (Dkt. No. 11 at 19 (extrinsic evidence of minimum wage for at least some class members).)

So, because Plaintiff makes a factual attack, Defendant "must support [its] jurisdictional allegations with competent proof under the same evidentiary standard that governs in the summary judgment context." *Salter*, 974 F.3d at 964.

## III. IMPACT OF PREVIOUS CLASS SETTLEMENT

Plaintiff's motion for remand indicated there had been a previous class settlement with Defendant for a similar set of claims in a state case, *Bivens v. Right at School, LLC*, No. 23STCV31316 (Cal. Super. Ct. 2023) ("*Bivens*"). (*See* Dkt. No. 11 at 31.) The Court therefore ordered the parties to submit supplemental briefing on "(1) what putative class remains after the

*Bivens* settlement and (2) the potential amount in controversy in light of the *Bivens* judgment." (Dkt. No. 16 at 1-2.) The parties agree that the *Bivens* settlement, if used to assess the amount in controversy, would narrow the proposed class and, consequently, the amount in controversy. (*See* Dkt. No. 20 at 7; Dkt. No. 21 at 3.) Defendant, however, argues "prior settlements cannot be included in the jurisdictional analysis for CAFA, because they are irrelevant for purposes of amount in controversy." (Dkt. No. 20 at 6.) Instead, Defendant asserts the *Bivens* settlement is "properly viewed as an affirmative defense affecting the likelihood and scope of recovery, not the amount placed in controversy by the Complaint." (*Id.* at 2.)

Defendant's view is correct. In *Arias v. Residence Inn by Mariott*, the Ninth Circuit addressed the impact of the plaintiff's release from a prior class action settlement from the amount in controversy. The *Arias* court stated:

> [Plaintiff] argues that the position taken by [defendant] in its summary judgment motion in state court—that [plaintiff's] claims are barred by a release from a prior class action settlement—defeats federal court jurisdiction. [Plaintiff] is wrong for two reasons. First, it is well settled that post-filing developments do not defeat jurisdiction if jurisdiction was properly invoked as of the time of filing. Second, ***the strength of any defenses indicates the likelihood of the plaintiff prevailing; it is irrelevant to determining the amount that is at stake in the litigation***. [Plaintiff's] argument conflates the amount in controversy with the amount of damages ultimately recoverable. As we stated in *Ibarra*, "even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and at trial. This is so because they are not stipulating to damages suffered, but only estimating the damages that are in controversy." 775 F.3d at 1198 n.1.

*Arias*, 936 F.3d at 928 (cleaned up). So, putative class members' release from a prior class action settlement is an affirmative defense and is "irrelevant to determining the amount that is at stake in the litigation." This makes sense because "[e]valuating plaintiff's argument [on the previous class settlement] requires examining the preclusive effect that the prior settlement has on the instant case. The court cannot do that at this jurisdictional inquiry stage of the litigation." *Hernandez v. BFS Group of Cal. LLC*, No. 2:26-cv-00633-DAD-CKD, 2026 WL 3333646, at *3 (E.D. Ca. Nov. 4, 2026) (citing *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 (9th Cir. 2020)); *see also Sarmiento v. Vitas Healthcare Corp. of Cal.*, No. 2:25-cv-04025-MAA, 2025 WL 2417182, at *7



United States District Court
Northern District of California

(C.D. Cal. Aug. 19, 2025) (refusing to consider a previous class action settlement in determining the amount in controversy); *Yamamoto v. Fed. Express Corp.*, No. CV 25-6796 PA (SKx), 2026 WL 63566, at *4 (C.D. Cal. Jan. 8, 2026) (same).

Plaintiff's arguments to the contrary are unpersuasive. Many of the cases relied on by Plaintiff were decided prior to *Arias*. *See, e.g., De Leon v. NCR Corp.*, No. C 12–01637 SBA, 2013 WL 503092, at *4 (N.D. Cal. Feb. 8, 2013); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1152 (S.D. Cal. 2018). And the only post-*Arias* cases to assume a previous class action settlement would lower the amount in controversy only did so at the point such an assumption would not affect the grant or denial of remand. *See, e.g., Aguilar v. Lab'y Corp. of Am.*, No. CV 22-9061-DMG (SKx), 2026 WL 1192132, *7-8, (C.D. Cal. Apr. 26, 2026) (concluding that "even assuming the [prior] settlement could affect the amount in controversy," it would still deny remand); *Wilson v. IKEA N. Am. Servs., LLC*, No.: CV 20-09075-CJC (ASx), 2020 WL 7334486, at *3 (C.D. Cal. Dec. 14, 2020) (rejecting defendant's estimates of the amount in controversy and only then noting it was "particularly concerning" that some claims were covered by a prior settlement).

At bottom, Plaintiff "is the master of [her] complaint, and [she] owns the allegations that have landed [her] in federal court." *Greene*, 965 F.3d at 774. Here, Plaintiff could have limited the class period in light of the *Bivens* settlement but, because she did not, Defendant was reasonable in calculating the amount in controversy based on the alleged class period. *See Sarmiento*, 2025 WL 2417182, at *7 ("That Plaintiff may now, after the fact and for purposes of this Motion, concede that the [prior class settlement] subsumes a majority of the Class Action claims asserted in [her] Complaint is of no consequence as the Complaint stands on its allegations unless and until Plaintiff amends it."); *Yamamoto*, 2026 WL 63566, at *4 ("Plaintiff could have amended the [complaint] so as to omit the potential class members that are covered by the [prior] settlement, but he did not. Accordingly, Defendants may rely on that class definition when calculating the amount in controversy.").[3] So, the Court will not take account of the *Bivens*

[3] In Plaintiff's supplemental brief, she indicates she is willing to seek leave to amend her Complaint to narrow the class period. (Dkt. No. 21 at 8.) Such a motion, however, is not pending before the Court.

settlement in assessing the potential amount in controversy.

## IV. THE PARTIES' ESTIMATES AND EVIDENCE

To estimate Plaintiff's class size and damages, Defendant submitted declarations from Ms. Housty, Defendant's Vice President Human Resources, and from Mr. Clark, a Senior Data Scientist employed by Defendant's counsel. (Dkt. Nos. 1-3, 1-4.)[4] Ms. Housty's team collected payroll data for Defendant's non-exempt, hourly employees in California during the class period and transmitted that data to Defendant's counsel. (Dkt. No. 1-3 ¶ 3.) Mr. Clark then "validat[ed] and process[ed]" the datasets for Defendant. (Dkt. No. 1-4 ¶ 4.)

As relevant here, Defendant's payroll data shows during the class period, Plaintiff's proposed class consists of 6,546 employees who "worked a total of 228,926 workweeks during" the four-year class period and were paid every other week. (*Id.* ¶¶ 5, 11.) During the period the "average hourly rate across all" 6,546 employees was $22.79. (*Id.* ¶ 6.) From these figures, Defendant estimates the amount of controversy is $49,373,000,[5] based on:

(1) $3,913,000 for failure to pay overtime based on an assumption of 0.5 hours of unpaid overtime per week paid,

(2) $1,043,000 for meal break violations based on 0.2 missed meal breaks per workweek,

(3) $1,043,000 for rest break violations based on 0.2 missed rest breaks per workweek,

(4) $2,609,000 for failure to pay minimum wages based on an assumption of thirty minutes of off-the-clock work per workweek,

(5) $24,278,000 for waiting time penalties based on the average daily wage rate for the class members who have separated from employment with Defendant,

(6) $3,178,000 for failure to provide accurate itemized wage statements based on the escalating penalty per employee and a one-year statute of limitations,

(7) $3,434,000 for failure to reimburse necessary business expenses based on $15 per week of unreimbursed expenses, and

---

[4] Defendant later submitted a supplemental declaration from Ms. Housty containing the same summary payroll statistics as were provided in Mr. Clark's initial declaration. (Dkt. No. 12-1.)
[5] This Order rounds estimated amounts to the nearest thousand.

(8) $9,875,000 in attorneys' fees based on a benchmark of 25% of the total amount in controversy.

(*Id.* ¶¶ 7-12; Dkt. No. 1 ¶¶ 73, 83.)

Plaintiff's motion does not estimate the amount in controversy for any claim, but objects to Defendant's calculations for all causes of action.

**A. Meal and Rest Period Calculations (Second and Third Causes of Action)**

Plaintiff alleges Defendant required employees "to work for periods longer than five (5) hours without an uninterrupted off-duty meal period of not less than thirty (30) minutes" and "failed to compensate [them for] the full meal period premium for work performed during meal periods." (Dkt. No. 1-1 ¶¶ 84, 87.) Based on Plaintiff's general allegation Defendant had a "company-wide policy and practice of" failing to provide meal periods, (*id.* ¶ 4), and a four-year statute of limitations, Defendant assumes "1 meal period violations [sic] per every 5 workweeks" and estimates $1,043,000 in unpaid meal periods. (Dkt. No. 1 ¶ 50.)[6]

Plaintiff similarly alleges Defendant "failed to provide Plaintiff and the other class and subclass members with legally compliant rest periods and failed to pay Plaintiff and the other class and subclass members their proper and full rest period premium due pursuant to California Labor Code § 226.7." (Dkt. No. 1-1 ¶ 98.) Based on Plaintiff's general allegation Defendant had a "company-wide policy and practice of" failing to provide rest breaks, (*id.* ¶ 4), Defendant assumes "1 rest break premium for every 5 workweeks" and estimates $1,043,000 in unpaid rest breaks. (Dkt. No 1 ¶¶ 54-55.)[7]

Plaintiff argues that each $1,043,000 figure is based on the unsupported assumption that "each and every putative class member missed meal and rest breaks at a 20% violate [sic] rate." (Dkt. No. 11 at 20.) As a threshold matter, Plaintiff misconstrues Defendant's assumptions. Defendant assumes one violation per five workweeks, which equates to one violation per 25 days worked. (Dkt. No. 1 ¶ 50.) That is a 4% violation rate, not the 20% violation rate characterized

---

[6] Defendant multiplies $22.79 per hour by the 0.2 hours per week assumed violation rate and 288,926 workweeks to reach $1,043,444.71. (Dkt. No. 1 ¶ 50 n.3.)

[7] Defendant multiplies $22.79 per hour by the 0.2 hours per week assumed violation rate and 288,926 workweeks to reach $1,043,444.71. (Dkt. No. 1 ¶ 55 n.4.)



United States District Court
Northern District of California

by Plaintiff. And the reason Defendant used "0.2" in its calculations, (*see* Dkt. No. 1 ¶ 50 n.3; *id.* ¶ 55 n.4), is that Defendant was multiplying by weeks (which consist of five workdays), not days. (*See* Dkt. No.14 at 13 (Plaintiff's characterization of Defendant's calculations).) Relying on these inaccurate characterizations of Defendant's assumptions, Plaintiff calculates the potential amount in controversy for these claims as $264,000. (Dkt. No. 14 at 14.)

In any case, the Ninth Circuit's ruling in *Perez v. Rose Hills Co.*, 131 F.4th 804 (9th Cir. 2025) is dispositive. There, the defendant "provided a declaration from a company representative showing the number of nonexempt employees it employed during the class period" and "then computed the amount in controversy by making an assumption about the rate at which it was alleged to have committed the various violations." *Id.* at 809. The defendant "tethered that assumption to the language in the complaint—namely, that it had committed the alleged violations 'at times' and 'throughout the statutory period.'" *Id.* The defendant initially assumed a violation rate of one-hour per week, but when the district court issued an order to show cause, reduced that violation rate by 50 percent. *Id.* at 807. In finding the amount in controversy requirement satisfied, the Ninth Circuit stated:

> It may be true that the phrase "at times" could support a lower violation rate as easily as it could support the violation rate that Rose Hills assumed. But that does not automatically render the rate assumed by Rose Hills unreasonable. And if Perez believed that some other assumption would have been more reasonable, she was free to propose that rate. (She was also free to use some more specific phrase than "at times" when drafting the complaint; had she done so, she could have constrained the range of assumptions that Rose Hills could reasonably adopt.) The district court could then have weighed the evidence and arguments in deciding which assumption was more appropriate. *See Jauregui*, 28 F.4th at 996.

*Id.* at 810. So too here. In moving to remand, Plaintiff proposed no alternative calculation. In her reply, Plaintiff offered an analysis of what would be, effectively, a 0.8% violation rate[8] and seems to suggest Defendant might have had "putative class members sign valid meal break waivers" such that there could be "an effective violation rate of zero (or close to zero)." (Dkt. No. 14 at 13-14.) But Plaintiff alleges both that Defendant had a "systematic, company-wide policy and practice of"

[8] Because Plaintiff multiples *workweeks* by 0.04 in making her calculations, she is assuming a violation rate of 0.8% (because 0.04 / 5 = 0.008 = 0.8%).

failing to provide meal periods and rest periods and that "Defendant failed to provide all requisite, legally complaint meal and rest periods to Plaintiff *and the other class* and subclass members." (Dkt. No. 1-1 ¶¶ 4, 44.) And, Defendant has introduced evidence that, of 827,690 shifts, "656,036 were 3.5 hours or longer, which would make them eligible for a rest period and 293,746 were 5 hours or longer, which would make the eligible for a meal period." (Dkt. No. 12 at 17 (quoting Dkt. No. 12-1 ¶ 10).) That equates to 79% of shifts being eligible for rest periods and 35% of shifts being eligible for meal periods. Given the language in the complaint and this share of qualifying shifts, it is reasonable for Defendant to assume a rest and meal violation once per every twenty-five days worked. *See Perez*, 131 F.4th at 809 ("[D]istrict court should [] consider[] whether the violation rate that [Defendant] assumed was a reasonable interpretation of the complaint.").

Accordingly, Defendant's assumption Plaintiff's unpaid rest and meal period claims place $2,087,000 at controversy is based on reasonable assumptions and, even if this amount is reduced by half, the jurisdictional amount in controversy would be satisfied with only a fraction of the estimated waiting time penalties discussed below.

**B. Waiting Time Penalties Calculations (Fifth Cause of Action)**

Plaintiff alleges Defendant failed "to pay Plaintiff and the other class and subclass members who are no longer employed by Defendants their wages, earned and unpaid, either immediately or within seventy-two (72) hours of their leaving Defendant['s] employ." (Dkt. No. 1-1 ¶ 119.) Assuming "a 100% violation rate," Defendant estimates all 4,524 class members whose employment terminated during the three-year statute of limitations experienced violations, generating $24,278,000 in waiting time penalties. (Dkt. No. 1 ¶ 67.)[9]

First, Plaintiff argues it is unreasonable to assume the class would be entitled to the maximum waiting time penalty. Under California law, an employer who fails to pay wages an employee is due upon termination may be liable for the wages of the employee until the unpaid

---

[9] Defendant multiplies $22.36 ("the last-effective average hourly rate during the statute of limitations period") by 8 hours, by 30 days, and by 4,524 employees to reach $24,277,593.60. (Dkt. No. 1 ¶ 67 n.6.)

amounts are satisfied or the employee files a lawsuit, but an employee may not receive more than 30 days' worth of wages. CAL. LAB. CODE § 203(a). And when a plaintiff alleges all class members whose employment was terminated within the statutory period suffered at least one unpaid wage or unpaid overtime claim, it is reasonable to assume the "vast majority (if not all)" terminated putative class members were entitled to 30 days of waiting time penalties." *Jauregui*, 28 F.4th at 994; *see also Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1125–26 (C.D. Cal. 2010) ("The court agrees [the] allegations suggest all class members were denied some form of proper compensation during their employment, and [ ] the underpayment was not corrected at end of their employment. Thus, defendants can properly assume that all employees were entitled to maximum waiting time penalties under Labor Code § 203.").

Plaintiff also disputes Defendant's use of a 100% violation rate. (Dkt. No. 11 at 24.) But, "[t]he fact that a very small percentage of employees might possibly not be entitled to the maximum penalty is not an appropriate reason to dismiss altogether Defendant's estimate for this claim." *Jauregui*, 28 F.4th at 994; *see also Seijas v. Jackson Lab'y*, No. 2:24-cv-03423-DJC-AC, 2026 WL 203257, at *7 (E.D. Cal. Jan. 27, 2026) ("Based on Defendants' assumptions regarding overtime and meal and rest break violations, which the Court has found to be reasonable, it is also reasonable to assume all or nearly all employees in the class would be entitled to recovery of waiting time penalties.").

Finally, Plaintiff argues Defendant fails to account for "shift lengths, variations on shifts, hours worked, employee classifications (e.g., full-time, part-time, etc.) . . . ." (Dkt. No. 11 at 24; *see also* Dkt. No. 14 at 14 (highlighting Defendant's failure to provide "any information about part-time vs. full-time employees, much less how many of the separated employees fall into either category").) Plaintiff offers herself as an example, arguing that since she worked part-time at the date of separation, she would not be owed the amount Defendant calculated based on assuming "every single former employee worked 8 hours for 30 consecutive days." (Dkt. No. 11 at 24.) But Plaintiff alleges "Plaintiff and the other class ad subclass members worked over eight (8) hours in a day, and/or forty (40) hours in a week during their employment with Defendants." (Dkt. No. 1-1.) So, in assuming every employee worked full-time, Defendant was reasonable in

United States District Court
Northern District of California

"tether[ing] that assumption to the language in the complaint." *Perez*, 131 F.4th at 809. That said, "even if this amount were cut in half to 4 hours per day" to reflect average shift length of 4.76 hours per shift, "the resulting amount in controversy is $12,138,796." (Dkt. No. 12 at 20.)

Because the amount in controversy reflects the maximum amount Plaintiff could possibly recover on behalf of the class, *Arias*, 936 F.3d at 927, Defendant's assumptions are reasonable and Defendant places at least $12,139,000 in controversy for the waiting time penalty claim.

**C. Wage Statement Calculations (Sixth Cause of Action)**

Plaintiff seeks actual damages "and/or associated penalties or liquidated damages" for Defendant's failure to "provide Plaintiff and the other class and subclass members with complete and accurate wage statements" in violation of § 226(a) of the California Labor Code. (Dkt. No. 1-1 ¶¶ 125, 128.) Based on a one-year statute of limitations and "[a]ssuming 100% of the wage statements were inaccurate," Defendant estimates 32,252 deficient wage statements for 2,941 class members. (Dkt. No. 1 ¶ 73.) And, "using the Labor Code section 226 penalty structure," Defendant estimates $3,178,000 in inaccurate wage statement penalties. (*Id.*)

Plaintiff argues Defendant's assumption of a 100% violation rate is unsupported by the Complaint's allegations and Defendant's limited evidence. At most, Plaintiff argues the Court should apply the 4% violation rate Defendant estimated for the meal and rest break claims, which, by Plaintiff's calculations, would total $133,000. (Dkt. No. 14 at 16.)

Given Plaintiff's nondescript allegations and Defendant's data on number of employees during the class period, Defendant's assumption of a 100% violation rate is reasonable. As one district court compellingly reasoned:

> Defendant's consistent failure to provide accurate wage statements or pay wages at the end of class members' employment can be reasonably inferred from Plaintiff's other allegations. If Defendant had a "pattern and practice" of refusing to grant meal and rest breaks or pay class members for all hours worked, then it is likely that all or nearly all class members experienced wage statement and delay violations. After all, Defendant need only have caused a single violation per pay period for all wage statements to be inaccurate, and need only have caused and failed to remedy a single violation per employee for waiting time penalties to apply.

*Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. ED CV 19-0839-DOC (SPx), 2019 WL

7987117, at *6 (C.D. Cal. June 21, 2019) (internal citations omitted). And, contrary to Plaintiff's assertion, violation rates drawn from reasonable interpretations of the complaint need not independently be supported by competent evidence. *Perez*, 131 F.4th at 808; *see also id.* at 808 ("[A] CAFA defendant can most readily ascertain the violation rate by looking at the plaintiff's complaint.").

Plaintiff also objects "Defendant's generalized calculations do not even make sense as Defendant admits there is a $4,000 cap per employee on such claims, yet does nothing to address this." (Dkt. No. 11 at 27.) Yet, as Defendant highlights, "since there are 26 bi-weekly pay periods across the relevant statutory time period, the maximum amount of statutory penalties pursuant to Labor Code § 226 that any employee could accrue would be $2250 ($50 x 1 + $100 x $25." (Dkt. No. 12 at 20.) And Defendant assigns an average of $1,080 in penalties per separated employee.[10] Defendant's assumptions thus do not breach the statutory cap.

So, Defendant places $3,178,000 for the sixth cause of action.

### D. Other Claims

Because the damages described above exceed $5 million, the Court need not and does not consider the overtime claim, the minimum wage claim, the business reimbursement claim, or attorneys' fees here. *See Arias*, 936 F.3d at 928 n.5 (explaining if a district court finds a defendant's estimate of damages in controversy would exceed the jurisdictional threshold, there would be "no need" to calculate additional damages); *Martin v. United Rentals (N. Am.), Inc.*, No. 3:25-CV-02041-JSC, 2025 WL 1554333, at *4 (N.D. Cal. June 2, 2025) ("The Court need not consider Plaintiff's arguments as the amount in controversy requirement is more than satisfied by the allegations as to unpaid rest period premiums and waiting time penalties.").

## CONCLUSION

Based on the adjusted assumptions and for the reasons set forth above, Defendant has placed at least $17,403,000 in controversy by a preponderance of the evidence: (1) $1,043,000 for meal break violations, (2) $1,043,000 for rest break violations, (3) $12,139,000 for waiting time

[10] $3,178,000 divided by 2,941 class members = $1,080.

penalties, and (4) $3,178,000 for failure to provide accurate itemized wage statements. So, the Court DENIES Plaintiff's motion to remand.

This Order disposes of Docket No. 11.

**IT IS SO ORDERED.**

Dated: November 23, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California